UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

NERVIN V.R.,[1]

        Petitioner,

    v.

KRISTI NOEM, et al.,

        Respondents.

No. 1:26-cv-00588-TLN-DMC

**ORDER**

      This matter is before the Court on Petitioner Nervin V.R.'s ("Petitioner") Petition for Writ of Habeas Corpus ("the Petition") (ECF No. 1) and Respondents' Motion to Dismiss the Petition (ECF No. 8).  For the reasons set forth below, the Petition is GRANTED and the Motion to Dismiss is DENIED.

///

///

---

[1]    The Court omits Petitioner's full name to protect sensitive personal information.  *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

## I.    FACTUAL AND PROCEDURAL BACKGROUND[2]

This matter arises out of Petitioner's challenge to the constitutionality of his civil immigration detention.  Petitioner came to the United States to seek asylum after fleeing political persecution in his home country.  (ECF No. 1 at 2.)  Petitioner entered the United States about September 25, 2023.  (*Id.*)  Upon entry, Petitioner approached immigration authorities and expressed a fear of returning to his home country.  (*Id.*)  U.S. Immigration and Customs Enforcement ("ICE") detained Petitioner, placed him into removal proceedings, determined he was not a flight risk or danger to the community, and released him an Order of Release on Recognizance.  (*Id.*)

Petitioner has resided in the United States since.  In that time, Petitioner complied with all immigration requirements and reporting obligations, obtained work authorization, and maintained lawful employment.  (*Id.*)  Petitioner also lacks any criminal history.  (*Id.* at 3.)

Nevertheless, in February 2025, Petitioner was detained as a result of a traffic stop during which he was traveling with his employer and a co-worker.  (*Id.*)  Despite presenting proof of his asylum application and work authorization, Petitioner was arrested and later transferred to ICE custody.  (*Id.*)  Respondents did not provide Petitioner with notice of intent to revoke his release or detain him.  (*Id.*)  Nor did Respondents provide an explanation for Petitioner's detention.  (*Id.*)

Over approximately ten months of detention, Respondents did not provide Petitioner with a meaningful opportunity to be heard.  (*See id.*)  On the record before this Court, Respondents also did not provide any individualized custody review for Petitioner or make any findings as to danger or flight risk.  (*Id.*; *see generally* ECF No. 8.)

Petitioner filed the instant Petition challenging the lawfulness of his civil immigration detention (ECF No. 1) and a motion for temporary restraining order ("TRO") (ECF No. 2).  On March 19, 2026, this Court found Petitioner likely to succeed on the merits of his due process claim and issued a TRO requiring Petitioner's immediate release.  (ECF No. 4.)  The Court now considers the Petition on the merits.

---

[2]    The facts in this case are not disputed.

## II. STANDARD OF LAW

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III. ANALYSIS

Petitioner claims his detention without a hearing violates the Fifth Amendment Due Process Clause.[3] (ECF No. 1 at 10–14.) Respondents claim Petitioner has no right to freedom or a hearing because he is subject to mandatory detention. (ECF No. 8 at 1–2.)

The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or property without due process of law. U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas*, 533 U.S. at 693. These due process rights extend to immigration proceedings and detention. *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989);

---

[3] Petitioner also asserts his detention violates substantive due process and the Fourth Amendment (ECF No. 1 at 9–10, 14–15), however, finding relief warranted under his Fifth Amendment claim, the Court declines to assess additional claims in favor of judicial economy.

3

*Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

### i. Liberty Interest

As for the first step, the Court finds Petitioner has a protectable liberty interest. "[F]reedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'" *Hernandez*, 872 F.3d at 993 (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). "Even where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause." *See Rico-Tapia v. Smith*, No. 25-CV-00379 SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025). Liberty interest may be strengthened over time. *See, e.g.*, *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest).

Petitioner has a clear liberty interest in his continued freedom protected by the Due Process Clause. The government released Petitioner into the United States on his own recognizance, where he built a life, found gainful employment, and complied with all laws and immigration requirements. (ECF No. 1 at 2–4.) Moreover, "the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release]." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025) (quoting *Morrissey*, 408 U.S. at 482) (modifications in original); *see also Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025) ("[A] noncitizen released from custody pending removal proceedings has a protected liberty interest in remaining out of custody."). Even if he is subject to removal or his freedom can be revoked by statute, Petitioner's liberty is still protected by the Due Process Clause. *See Hernandez*, 872 F.3d at 993, *Zadvydas*, 533 U.S. at 693.

In opposition, Respondents argue Petitioner is subject to mandatory detention as an "applicant for admission" under 8 U.S.C. § 1225(b)(2), which renders him without a liberty interest or any right to a hearing. (ECF No. 8 at 1–2.) The vast majority of courts across this

4

Circuit, including this one, have repeatedly rejected Respondents' argument on the applicability of § 1225(b)(2) to persons like Petitioner who reside in the United States after they were released by the government. *See Morales-Flores v. Lyons*, No. 1:25-CV-01640-TLN-EFB, 2025 WL 3552841, at *3 (E.D. Cal. Dec. 11, 2025) (explaining this Court's reasons for taking this position and collecting cases). "These courts examined the text, structure, agency application, and legislative history of 1225(b)(2) and concluded that it applies only to noncitizens 'seeking admission,' a category that does not include noncitizens like [Petitioner], living in the interior of the country." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025) (collecting cases). By comparison, "[t]he government's proposed reading of the statute (1) disregards the plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice." *Lepe v. Andrews*, No. 1:25-CV-01163-KES-SKO (HC), 2025 WL 2716910, at *4 (E.D. Cal. Sept. 23, 2025) (collecting cases).

As this Court has said numerous times, it will not reconsider its position on this issue absent distinguishing facts or new authority. Therefore, consistent with this Court's numerous prior rulings, the Court finds Petitioner is not an applicant for admission subject to mandatory detention under § 1225(b)(2).[4] Thus, Petitioner maintains his liberty interest protected by due process. The Court next turns to the procedural safeguards that were owed to Petitioner.

<em>ii. Procedures Required</em>

As to the second step — what procedures or process is due — the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute

---

[4] Rather, Petitioner's detention is governed by 8 U.S.C. § 1226(a) because he is in standard removal proceedings and he is statutorily entitled to the process required by that provision, including a bond hearing, at minimum.

5

procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

First, as explained above, Petitioner has a substantial private interest in his own liberty that is unquestionably affected by Respondents' actions detaining him. Despite his interest in maintaining his liberty, Petitioner was detained for approximately ten months without any opportunity to be heard as to the justification of his detention, unable to work, and separated from his community. Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by his detention. *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD, 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

Second, the risk of erroneous deprivation is significant given Petitioner did not receive any process, either pre- or post-detention. Because civil immigration detention is "nonpunitive in purpose and effect," a "special justification" must outweigh Petitioner's protected liberty interest in order for detention to comport with due process. *Zadvydas*, 533 U.S. at 690. Where removal is not imminent under a final order of removal, "[t]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions." *Hernandez*, 872 F.3d at 994. Here, the parties do not contend that Petitioner is subject to an order of removal. Additionally, Respondents do not contend that Petitioner is a danger to the community or a flight risk. (*See* ECF No. 8.) Indeed, in September 2023, immigration authorities found that Petitioner was not a danger or flight risk and released him on his own recognizance. (ECF No. 1 at 2.) *See also* 8 C.F.R. § 1236.1(c)(8). Respondents do not identify any changed circumstances to undermine that determination, while Petitioner contends he has no criminal history and has complied with all immigration requirements during his time in the United States. Therefore, the risk that he was detained without proper justification is high. *A.E. v. Andrews*, No. 1:25-CV-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025).

Finally, the government's interest in detaining Petitioner without a hearing is negligible, and the effort and cost required to provide Petitioner with procedural safeguards are minimal. *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14,

2025).  Although the Court recognizes the government's interest in immigration enforcement, that interest does not outweigh all procedural safeguards.  Notice and custody determination hearings are routine processes for Respondents.  Any delay in detention (if justified) for the time to provide notice and a hearing would have been minimal.  Any burden associated with the provision of these processes does not outweigh Petitioner's liberty interest and the risk of erroneous deprivation.

The Court finds due process required Respondents to provide notice and a pre-deprivation hearing.  The United States Supreme Court "usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original).  The Court describes post-deprivation remedies as the "special case" where those are "the only remedies the State could be expected to provide." *Id.* at 129.  Respondents have not identified any reason Petitioner should be a "special case," nor do they supply an individualized justification for Petitioner's detention.  (*See generally* ECF No. 8.)

Petitioner was not provided with any notice or explanation for his detention, neither was he provided with a pre-deprivation hearing.  Therefore, Respondents violated the Fifth Amendment and Petitioner's procedural due process rights.

**IV.    CONCLUSION**

Accordingly, IT IS HEREBY ORDERED:

1. The Petititon for Writ of Habeas Corpus (ECF No. 1) is GRANTED.[5]

2. Respondents' Motion to Dismiss (ECF No. 8) is DENIED.[6]

3. To avoid further irreparable harm and protect the public interest, Respondents are

---

[5]    Petitioner also seeks an award of attorney's fees and costs under the Equal Access to Justice Act.  (ECF No. 1 at 16.)  The Court will consider any timely filed request for fees and costs on a properly noticed and supported motion.

[6]    Respondents argue this case should be held in abeyance until the Ninth Circuit rules on *Rodriguez Vasquez v. Bostock*, 779 F.Supp.3d 1239 (W.D. Wash. 2025), which may be dispositive of one of the issues in case.  (ECF No. 8 at 2.)  The Court declines to do so.  As this Court has said previously, it will not delay issuing relief on the prospective chance a pending appeal could change the outcome of one claim.

ENJOINED from re-detaining Petitioner absent compliance with constitutional protections, including a minimum of seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where: (a) Respondents show material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that the government's interest in protecting the public or ensuring Petitioner appears at future immigration proceedings outweighs his constitutionally protected interest in remaining free from detention. *Zadvydas*, 533 U.S. at 690; *Hernandez*, 872 F.3d at 990. At any such hearing, Petitioner shall be allowed to have counsel present.

4. The Clerk of the Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

Date: July 1, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE